**IN THE COURT OF APPEALS OF IOWA**

No. 23-1536
Filed December 20, 2023

**IN THE INTEREST OF A.B.-G., K.B.-G., and K.B.-G.,**
**Minor Children,**

**E.B.-G., Mother,**
　　　Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, District Associate Judge.

A mother appeals the termination of her parental rights to three children. **AFFIRMED.**

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Victoria D. Noel of the Noel Law Firm, P.C., Clinton, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**TABOR, Presiding Judge.**

A mother, Elaina, appeals the juvenile court order terminating her parental rights to two sons, A.B-G. (age six) and K.B-G. (age five), and a daughter, K.B.-G. (age four).[1] At the termination hearing, Elaina candidly admitted she could not care for the children: "I am not capable of providing them with what they need." But she asked for more time to reunify. She makes the same request on appeal. She also argues that termination is not in the children's best interests and that severing the parent-child bond would harm her sons and daughter.

After a full review of the record, we decline Elaina's request.[2] Like the juvenile court, we find that after two years in flux, a move toward permanency will serve the children's bests interests.

## I. Facts and Prior Proceedings

This family came to the attention of the Iowa Department of Health and Human Services in early 2020 based on concerns of inadequate supervision of the children. In October 2020, Elaina tested positive for methamphetamine. The parents agreed to a safety plan, and the family moved in with the maternal grandmother who supervised Elaina's interactions with the children. The parents resumed custody in February 2021. But the reunion lasted less than one year. Because the parents continued to struggle with substance use, mental health, stability, and domestic violence, the court approved removal, and the children went

---

[1] The order also terminated the rights of the children's father. He does not appeal. Elaina also has an older daughter who has a different father. That daughter's custody was set by a bridge order, and she is not a party in this appeal.

[2] We review termination proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We give weight to the juvenile court's fact findings, but they do not bind us. *Id.* Our top concern is the children's best interests. *Id.*

back to live with their grandmother in January 2022. The department approved unsupervised weekend visits for Elaina in May. But she never arranged for the children to even visit her apartment, much less stay overnight.

The juvenile court held a permanency hearing in the summer of 2022. By then, the grandmother decided that she could not be the children's permanent caregiver. In August 2022, the department placed the children with their paternal aunt and uncle. Because of the unexpected change in long-term placement plans, the juvenile court postponed permanency. But Elaina did not use that time to rebuild a relationship with the children. Instead, she missed scheduled visits, failed to address her mental health, and flouted drug testing. In November 2022, the court granted one last extension, reminding Elaina that she did not have "a minute to waste in fully engaging in services" and stabilizing her life.

But just a month later, Elaina informed the department that she had moved to the state of Wyoming. She stayed there almost two months. She later testified that she knew she had warrants for her arrest in Iowa on drug-related charges. When Elaina did return to Iowa, she faced incarceration on those charges. Altogether, she did not see the children for eight months.

The State petitioned for termination of parental rights in March 2023. After Elaina's release from custody in May 2023, she started substance-use treatment. But the program dismissed her for lack of cooperation two months later.

The juvenile court held the termination hearing in July. Elaina acknowledged her "shortcomings" in meeting parenting expectations and the negative effect that her mental-health struggles have had on the children. Her attorney asked for an extension of time so that she could get "her bearings,"

including substance-abuse and mental-health treatment after her incarceration. The children's guardian ad litem (GAL) objected to that request:

> These kids needed their parents to start trying a long time ago. It is far past time for permanency for these children. They are in a safe environment, and not only that, but in an extremely loving environment in relative care. . . .
> . . . I believe that reinitiating contact with their mother . . . given any type of extension of time in this, is only going to be further traumatic to them and be to their detriment.

The juvenile court terminated Elaina's parental rights under Iowa Code section 232.116(1) (2023), paragraphs (b), (d), (e), (f), (h), and (*l*). The court also found that the children no longer had a bond with their mother, and termination was in their best interests. The court denied her request for more time, finding: "In the past year, [she has] not done a single thing to stabilize [her life], address [her] mental health or substance abuse, or provide for these children." Elaina appeals.

## II.    Analysis

Elaina contends termination is not in the children's best interests and the juvenile court should not have denied her request for more time to reunify. She concedes that she did not see the children for eight months after the previous delay in permanency. But she asserts that she has been "asking to see the children for quite some time."[3] She also contends the children "were bonded" with her and severing that bond would hurt them. *See* Iowa Code §§ 232.116(2), (3).

---

[3] Elaina notes that during her four months in the Clinton County jail, she asked for video visits with the children, but her request was denied. The social worker testified that the department decided—after checking with the GAL—that video visits would not be in the children's best interests. We do not read Elaina's mention of video visits as raising a reasonable-efforts challenge under section 232.102A. So we do not address that issue.

We start with her request to delay permanency. A court may deny termination and give a parent more time for reunification only if the need for removal "will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). And not only must the record show that Elaina will have surmounted the obstacles to reunification in six months, but we must consider whether the delay is in the children's best interests. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). Like the juvenile court, we find six more months will not help Elaina achieve what she has failed to do since involvement with the department started in early 2020. She has not taken the necessary steps to be a successful parent.

And a delay is not in the best interests of her children. When assessing the children's best interests, we first consider their safety and then look to the best placement for furthering their long-term nurturing and growth, and their physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We credit the GAL's view that the children's placement with their aunt and uncle is a safe and "extremely loving" environment. The GAL also reported that Elaina "has been absent for so long" that the bond with the children has deteriorated. The department employees who are closest to the family see no remaining bond and testified that the children didn't ask about their mother during her absence. On this record, the mother cannot show that termination will harm the children because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c).

**AFFIRMED.**